IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHELE STIMATZE,

    *Plaintiff*,

v.

BOARD OF COUNTY COMMISSIONERS
FOR GEARY COUNTY, KANSAS

    *Defendants*.

Case No. 23-CV-4052-EFM

**MEMORANDUM AND ORDER**

    Before the Court is Defendant Board of County Commissioners for Geary County (the "Board")'s Motion to Dismiss (Doc. 13).[1] In Count I, Plaintiff Michele Stimatze brings a freedom of speech retaliation claim under 42 U.S.C. § 1983. In Count II, Plaintiff brings a retaliatory discharge claim under Kansas public policy. The Board seeks to dismiss both claims for failure to state a claim upon which relief can be granted. For the reasons stated herein, the Court grants the Board's Motion to Dismiss.

          **I.**        **Factual and Procedural Background[2]**

    The Board is a local governmental agency in Kansas responsible for implementing, promulgating, and establishing policies, customs, and usages within Geary County. In January 2017, the Board hired Plaintiff as the Director of Geary County's Convention and Visitor's Bureau

---

[1] Originally, this Motion to Dismiss was jointly brought by Defendants Patricia Giordano and the Board. However, on February 6, 2024, the Court granted Plaintiff's request to voluntarily dismiss Giordano from this case. As such, the Board is the only remaining defendant.

[2] The facts in this section are taken from Plaintiff's Amended Complaint unless otherwise cited.

(the "CVB"). Between 2017 and 2020, Plaintiff received favorable employment evaluations by the Board, wherein the Board characterized Plaintiff's work product as "good" and "excellent."

In January 2021, Patricia Giordano was elected to the Geary County Board of County Commissioners. In her elected capacity, Giordano possessed supervisory authority over Plaintiff. Shortly after Giordano's election, Plaintiff began noticing Giordano engage in troubling behavior. For example, Giordano would request that Plaintiff allocate funds to certain line items without the Board's approval, which was required pursuant to County policy. Further, Giordano would interfere with Plaintiff's efforts to improve the CVB by refusing to provide it with necessary funding.

In Spring 2021, shortly after Giordano's election, Plaintiff began expressing her dissatisfaction with how the Board handled certain issues, specifically raising the issue of Giordano's impropriety. She voiced these concerns both at the Board's monthly public meetings and openly to the public. Upon Plaintiff's expression of dissatisfaction, Giordano began sending Plaintiff harassing emails, making disparaging comments about Plaintiff and her department to the public, and communicating combatively with Plaintiff. Around June 29, 2021, the Board constructively discharged Plaintiff from her employment as the Director of the CVB.

Plaintiff filed suit on June 27, 2023. On December 11, 2023, Defendant filed this Motion to Dismiss. Plaintiff timely responded, and Defendants timely replied. Thus, the matters are fully briefed and ripe for the Court's ruling.

## II.  Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3] Upon such motion, the court

---

[3] Fed. R. Civ. P. 12(b)(6).

must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[4] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5] The plausibility standard reflects the requirement in Rule 8 that pleadings provide the defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[6] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[8] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[9]

### III.   Analysis

**A.   Plaintiff's § 1983 Claim**

Plaintiff brings a freedom of speech retaliation claim under § 1983 against the Board. She alleges that the Board deprived her of her constitutional rights by constructively discharging her from her employment in retaliation for her speech. The Board argues that Plaintiff's allegations fail to plausibly allege a freedom of speech retaliation claim.

---

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[7] *Iqbal*, 556 U.S. at 678–79.

[8] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[10] Here, Plaintiff alleges that the Board violated her First Amendment right to free speech. However, Plaintiff is a government employee, and the Supreme Court has "made clear a governmental employer may restrict speech made pursuant to an employee's official duties."[11] In light of this precedent, the Tenth Circuit employs a five-step inquiry for First Amendment retaliation claims called the "*Garcetti/Pickering*" analysis.[12] The elements for this analysis are:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.[13]

The first three steps pose "issues of law to be decided by the court."[14]

Here, the Board challenges Plaintiff's claim only at the first and second steps of the analysis. Thus, the Board insists that Plaintiff did not speak as a private citizen but pursuant to her official duties. Moreover, the Board claims that the subject of Plaintiff's speech was not a matter of public concern. The Court will address each argument in turn.

---

[10] *Knipe v. Leavenworth*, 2024 WL 3471332, at *1 (D. Kan. July 19, 2024) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

[11] *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)).

[12] *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202–03 (10th Cir. 2007) (synthesizing *Garcetti v. Ceballos*, 547 U.S. 410 (2006); and *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)).

[13] *Klaassen v. Atkinson*, 348 F. Supp. 3d 1106, 1166 (D. Kan. 2018) (quoting *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009)).

[14] *Id.*

1.     *Plaintiff spoke as a private citizen.*

Plaintiff maintains that her comments at the Board's public monthly meetings and to the general public were made in her capacity as a private citizen. The Board disagrees, asserting that this speech was made within Plaintiff's official capacity as Director of the CVB. The Court must examine these statements and the surrounding context to determine whether Plaintiff spoke as a private citizen or within her official capacity.

Plaintiff served as a public employee within her role as Director of the CVB. To promote "the efficient provision of public services," government employers "need a significant degree of control over their employees' words and actions."[15] Otherwise, the expressed views of public employees can "contravene governmental policies or impair the proper performance of governmental functions."[16] Yet, "public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."[17]

When addressing a free speech retaliation claim, courts must "take a practical view of all the facts and circumstances surrounding the speech and the employment relationship."[18] This includes considering the employee's audience and whether the conversation operated within her official duties or within her role as ordinary citizen.[19] "[N]ot all speech that occurs at work is made

---

[15] *Garcetti*, 547 U.S. at 418.

[16] *Id.* at 419.

[17] *Id.* at 417.

[18] *Brammer-Hoelter*, 492 F.3d at 1204 (10th Cir. 2007).

[19] *E.g.*, *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 748 (10th Cir. 2010) ("The speech protected by *Brammer-Hoelter*, however, occurred after hours in groups including *ordinary citizens* . . . . Unlike the plaintiffs in *Brammer-Hoelter*, however, Rohrbough spoke only to Hospital employees and only about matters within the scope of her duties as a nurse and Transplant Coordinator." (emphasis added) (citations omitted)); *Klaassen*, 348 F. Supp. 3d at 1167.

pursuant to an employee's official duties," and not "all speech about the subject matter of an employee's work [is] necessarily made pursuant to the employee's official duties."[20] However, "[i]f the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech 'simply reflects the exercise of employer control over what the employer itself has commissioned or created.'"[21]

"The guiding principle is that speech is made pursuant to official duties if it involves 'the type of activities that the employee was paid to do.'"[22] Following this principle, "if an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties."[23] Even speech involving "activities that the employee is not expressly required to perform" may be made pursuant to an employee's official duties.[24] "So long as the employee's speech "reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties.'"[25]

Here, Plaintiff alleges to have spoken in her private, individual capacity openly to the public and openly at monthly public meetings held by the Board. Plaintiff does not elaborate on the circumstances surrounding her expressions made openly to the public, so the Court instead focuses on her speech at the Board's public meetings. Notably, even unrequired attendance at a public meeting can be considered within an employee's official duties if she attends within her

---

[20] *Brammer-Hoelter*, 492 F.3d at 1202 (citing *Garcetti*, 547 U.S. at 420–21).

[21] *Id.* at 1202 (quoting *Garcetti*, 547 U.S. at 422).

[22] *Chavez-Rodriguez*, 596 F.3d at 714 (brackets omitted) (quoting *Green v. Bd. of Cnty. Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007)).

[23] *Id.* (citing *Brammer-Hoelter*, 492 F.3d at 1203).

[24] *Klaassen*, 348 F. Supp. 3d at 1167 (citations and brackets omitted) (quoting *Brammer-Hoelter*, 492 F.3d at 1203).

[25] *Id.*

role as an employee.[26] However, based on Plaintiff's allegations, Plaintiff did not attend these meetings within her role as Director. Instead, she alleges to have made a conscious choice as a citizen to present her concerns to the public. This Court recognizes the "importance of promoting the public's interest in receiving the well-informed views of government employees engaging in civic discussion."[27] Plaintiff's attendance was not an activity that she was "paid to do,"[28] nor did it reasonably contribute to the performance of an official duty. Thus, it plausibly presents itself as outside of her official duties.

Despite Plaintiff attending these meetings in her private capacity, the Board claims that the content of Plaintiff's speech involves her official duties. The Board argues that since Plaintiff was Director of the CVB, any speech complaining about the allocation of funds for the CVB would fall within her duties as Director. However, this mischaracterizes the speech that Plaintiff alleges was the subject of the Board's retaliation. Although the Amended Complaint does allege concerns regarding the allocation of funding for the CVB, Plaintiff does not allege these to be the subject of her speech. Rather, Plaintiff's speech criticized "how issues were being handled by the Board" and "issues of public concern regarding [Giordano's] behavior."

The Board suggests that vague references to "issues" do not present enough factual content to survive Rule 12(b)(6)'s plausibility standard. Importantly, however, these statements do not exist in a vacuum. Based on the Court's reading of the Amended Complaint, the "issues" to which she refers are the Board's failure to address Giordano's noncompliance with Geary County policy

---

[26] *Rock v. Levinski*, 2014 WL 4813824, at *4 (D.N.M. Aug. 8, 2014) (recognizing that a principal's attendance at an after-hours, community-related event was still within her official duties since she presented herself as the principal of the school, performed related functions to her role as a principal, and concluded the event herself); *see also Klaassen*, 348 F. Supp. 3d at 1252.

[27] *See Garcetti*, 547 U.S. at 419.

[28] *See Chavez-Rodriguez*, 596 F.3 at 713.

and Giordano's interference with Plaintiff's efforts to improve the CVB. Although the allegations are brief, the Court finds these statements adequate to proceed with its analysis of whether Plaintiff's speech was made pursuant to Plaintiff's official duties.

Plaintiff's concerns regarding the Board's competence and Giordano's behavior fall outside of Plaintiff's official duties. Comparably, in *Brammer-Hoelter*, the Tenth Circuit found that the plaintiff teachers' criticisms of the defendant school board were among the matters outside of their official duties because the teachers lacked supervisory responsibility overs such matters.[29] Additionally, if an employee complains about responsibilities that do not belong to her, but instead to someone else, that speech falls outside the employee's official duties.[30]

Here, Plaintiff lacks supervisory authority over both the Board and Giordano. The Board employed Plaintiff, and Giordano sat as a member of the Board. Thus, criticisms of the Board's mismanagement and Giordano's behavior are not matters over which Plaintiff has supervisory responsibility. As a result, these concerns fall outside of Plaintiff's official duties.

Viewed in the light most favorable to Plaintiff, attending public meetings in her private capacity and lacking supervisory authority over the issues she discussed support Plaintiff's position that she did not speak pursuant to her official duties. Therefore, Plaintiff's Amended Complaint plausibly alleges that she spoke as a private citizen.

　　*2.　　Plaintiff's speech failed to address a matter of public concern.*

Although Plaintiffs criticisms of Giordano and the Board were made in her private citizen capacity, Plaintiff must also plausibly allege that the criticism involved matters of public concern.

---

[29] *See Brammer-Hoelter*, 492 F.3d at 1204–05.

[30] *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1332–33 (10th Cir. 2007) (holding that plaintiff's complaints involving responsibilities of the board members instead of her own responsibilities fell sufficiently outside of the scope of her official duties).

"Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."[31] "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."[32] However, "[c]ourts construe 'public concern' very narrowly."[33]

When deciding whether speech addresses matters of public concern, "the court may consider 'the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest.'"[34] It is not enough "that the public interest was part of the employee's motivation;" the Tenth Circuit "requires that 'the employee's primary purpose was to raise a matter of public concern.'"[35] Even if an employee's primary motive was to raise matters of public concern, "an employee's subjective motivation, standing alone, is not determinative."[36] Thus, while it still considers motive, this Court must ultimately address the content of the speech. "Statements revealing official impropriety usually involve matters of public concern."[37] In contrast, "speech relating to internal personnel

---

[31] *Johnson v. Unified Sch. Dist. 507*, 580 F. Supp. 3d 999, 1009 (D. Kan. 2022) (citing *Lane v. Franks*, 573 U.S. 228, 241 (2014)).

[32] *Leverington v. City of Colo. Springs*, 643 F.3d 719, 727 (10th Cir. 2011) (citing *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)).

[33] *Id.* (citing *Flanagan v. Munger*, 890 F.2d 1557, 1563 (10th Cir. 1989)).

[34] *Klaassen*, 348 F. Supp. 3d at 1171 (quoting *Brammer-Hoelter*, 492 F.3d at 1205).

[35] *Peterson v. Williams*, 2022 WL 1421959, at *5 (10th Cir. May 5, 2022) (quoting *Singh v. Cordle*, 936 F.3d 1022, 1035 (10th Cir. 2019)).

[36] *Arndt v. Koby*, 309 F.3d 1247, 1254 (10th Cir. 2002).

[37] *Brammer-Hoelter*, 492 F.3d at 1205.

disputes and working conditions ordinarily will not be viewed as addressing matters of public concern."[38]

The context surrounding Plaintiff's statements indicate that her primary motive was to raise matters of public interest. The fact that Plaintiff's speech occurred at meetings open to the public and not within her workplace plausibly shows her intent to share these issues with the public. However, the Court must also analyze the content of the speech to determine if it raises a matter of public concern.

Reports of county employees violating county policies constitute matters of public concern.[39] Here, however, Plaintiff's allegations fail to reach the level of particularity needed to analyze the content of her speech. The Court can reasonably infer that Plaintiff criticized the Board's handling of issues and Giordano's behavior. However, the Court must "look beyond the general topic of the speech to evaluate more specifically *what was said* on the topic" when determining if it addresses a matter of public concern.[40] Although Plaintiff should know what she said, Plaintiff fails to provide any particular statements she made at these public meetings. Instead, Plaintiff provides general topics of what she discussed.[41] Although a board of commissioners' incompetence or a county employee's impropriety may involve matters of public concern, the Court requires more specificity to assess the "content, form, and context of a given statement."[42]

---

[38] *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996).

[39] *See Hawkins v. Bd of Cnty. Comm'rs of Coffey Cnty.*, 376 F. Supp. 3d 1200, 1213–14 (D. Kan. 2019) (holding that criticisms of county employees violating county policies plausibly alleged a matter of public concern).

[40] *Moore v. City of Wynnewood*, 57 F.3d 924, 932 (10th Cir. 1995) (emphasis added).

[41] *See Garcia v. Geier*, 2017 WL 3605383, at *5 (D.N.M. Feb. 24, 2017) (citing *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988)) ("Plaintiff has not alleged any specific statements he made at the Union meeting, so the Court is unable to examine the content and form of his speech").

[42] *See Leverington*, 643 F.3d at 727; *see also Garcia*, 2017 WL 3605383, at *5 ("Here, Plaintiff has not alleged any specific statements he made at the Union meeting, so the Court is unable to examine the content and form of his speech. However, based on the 'myriad categories' of speech that Plaintiff identifies in the Complaint, the Court

Thus, because Plaintiff fails to plead with particularity that her speech addressed a matter of public concern, the Court dismisses Count I.

B.  **Plaintiff's Kansas Public Policy Claim**

Plaintiff claims that her constructive discharge violated Kansas public policy. The Board seeks dismissal of this claim, arguing that because it falls under the KTCA, Plaintiff should have provided notice to Geary County prior to filing the lawsuit, but it did not. The Court agrees that Count II should be dismissed, but it reaches this conclusion on different grounds than those argued by the Board.

Under the adequate alternative remedy doctrine, if an adequate federal or state statutory remedy is available, the public policy claim under Kansas common law is precluded.[43] Although the preclusion issue was not raised before this Court, "it is well-settled that courts have discretion to raise and decide issues sua sponte."[44] Specifically, "the Supreme Court has suggested courts should consider 'an issue antecedent to and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief.'"[45] "The preclusion defense satisfies these criteria."[46] If the adequate alternative remedy doctrine forecloses Plaintiff's Kansas public policy claim, that claim will necessarily fail on the merits and thus cannot serve as the basis for recovery.

To be certain, it is well-established that Kansas's adequate alternative remedy doctrine precludes the type of claim brought by Plaintiff. For example, in *Groh v. City of Lenexa*, the

---

has examined the context of the speech and finds it concerned Mr. Garcia's personal grievances . . . and therefore did not touch upon a matter of public concern." (further citations omitted))

[43] *Sporleder v. U.S. Bancorp*, 2019 WL 3716453, at *2 (D. Kan. Aug. 7, 2019) (citing *Conner v. Schnuck Mkts., Inc.*, 906 F. Supp. 606, 615 (D. Kan. 1995)).

[44] *Denver Homeless out Loud v. Denver*, 32 F.4th 1259, 1270 (10th Cir. 2022) (further citations and quotations omitted).

[45] *Id.* (quoting *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993)).

[46] *Id.*

plaintiff alleged "that she was terminated in retaliation for exercising her First Amendment right to free speech and that this violate[d] Kansas public policy."[47] However, this Court determined that this claim was preempted by the plaintiff's § 1983 claim because it provided an adequate remedy for her termination.[48] More recently, this Court held in *Johnson v. Unified School District 507* that the plaintiffs' free speech retaliation claims were precluded by the adequate alternative remedy doctrine because the § 1983 claims and retaliatory discharge claims relied on the same set of facts.[49] Thus, because the § 1983 claim provided an adequate remedy, the Court held that the plaintiffs' common-law retaliatory discharge claim failed.[50]

Like in *Groh* and *Johnson*, here, Plaintiff alleges that her constructive discharge was in retaliation for exercising her freedom of speech. But when doing so, Plaintiff relies on the same underlying facts from her § 1983 claim to form her state law claim. And since these claims address the same conduct, the federal statutory remedy is sufficient to address the state's public policy concerns.[51] Thus, given that § 1983 provides an adequate alternative remedy for Plaintiff's alleged harm, the Court finds that Plaintiff's use of Kansas's public policy exception is precluded by the adequate alternative remedy doctrine.[52] As such, Plaintiff fails to plead a retaliatory discharge claim based on Kansas public policy, and so the Court dismisses Count II.

---

[47] *Groh v. City of Lenexa*, 1991 WL 79662, at *4 (D. Kan. Apr. 16, 1991).

[48] *Id.*

[49] *Johnson*, 580 F. Supp. 3d at 1011.

[50] *Id.*

[51] *Debus v. Burlington N. & Santa Fe Ry. Co.*, 157 F. Supp. 3d 1034, 1036–37 (D. Kan. 2016).

[52] *See id.*

-13-

**IT IS THEREFORE ORDERED** that Defendant Board of County Commissioners for Geary County's Motion to Dismiss (Doc. 13) is **GRANTED**.

**IT IS SO ORDERED.**

This case is closed.

Dated this 8th day of October, 2024.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE